UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

IN RE:
$323,647.60 IN FUNDS
BELONGING TO THE
CALIFORNIA VALLEY MIWOK TRIBE,  Case No. 18 CV 01194 JAP/KBM

MEMORANDUM OPINION AND ORDER DENYING
MOTION TO LIFT STAY OF INTERPLEADER ACTION

In the MOTION TO LIFT STAY IN CALIFORNIA VALLEY MIWOK TRIBE INTERPLEADER ACTION AND TO SET OSC OR SUMMARY JUDGMENT SCHEDULE (Doc. No. 8) (Motion to Lift Stay), Defendant-in-Interpleader Silvia Burley (Burley) and interested party the General Council of the CVMT (together, Movants), purportedly on behalf of Defendant-in-Interpleader the California Valley Miwok Tribe (CVMT or Tribe), ask the Court to lift a stay of this Interpleader Action. On February 13, 2017, the Court stayed this Interpleader Action, "pending a final decision by the Department of the Interior recognizing a government for the Tribe or until further order of this Court." ORDER GRANTING DEFENDANTS-IN-INTERPLEADER'S JOINT MOTION FOR STAY (Doc. No. 7) at 2. The purpose of the stay was to allow the appeal of a decision issued by the United States District Court for the Eastern District of California (E.D. Ca.) to the Ninth Circuit Court of Appeals. The appeal involved a review of a 2015 Decision (the 2015 Decision) issued by the Department of the Interior's Assistant Secretary for Indian Affairs Kevin Washburn (Secretary Washburn). (*See* Compl. (Doc. No. 2) Ex. A.) The Movants argue that since the Ninth Circuit has now affirmed the E.D. Ca.'s decision upholding the 2015 Decision, the Court should lift the stay. The Movants then ask the Court to enter an order to show cause why "these interpleader funds should not be distributed to either the Burley Faction, or, alternatively, to the Burley family as enrolled members of the

1

Miwok Tribe[.]"[1] In the alternative, the Movants ask the Court to "set a briefing schedule on the issue on cross-motions for summary judgment." (Mot. to Lift Stay at 4.)

In the RESPONSE IN OPPOSITION TO MOTION TO LIFT STAY (Doc. No. 11) (Response) Defendants-in-Interpleader and members of a Tribal Council formed in 2013, Yakima Dixie,[2] Velma Whitebear, Antonia Lopez, Gilbert Ramirez, Jr., Antoinette Lopez, Michael Mendibles, and Iva Carsoner (the Dixie Faction) argue that the stay should not be lifted because the BIA has not recognized a governing body for the Tribe. Instead, the Dixie Faction asks the Court to deny the Motion to Lift Stay and to transfer the Interpleader Action to the E. D. Ca. where all of the Defendants-in-Interpleader reside. *See* Response; and NOTICE OF MOTION AND MOTION TO TRANSFER VENUE (Doc. No. 9), MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE (Doc. No. 9-1) (together, Motion to Transfer). The Movants filed a reply brief. *See* REPLY TO OPPPOSITON TO MOTION TO LIFT STAY (Doc. No. 12).

Having carefully considered all pleadings, briefs, applicable law and procedure, the Court will deny the Motion to Lift Stay. The Court is aware that even though the severed Interpleader Action (No. 18 CV 1194) fails to name the Plaintiffs-in-Interpleader as parties, they were never formally dismissed, discharged, and relieved of responsibility for disbursing the interpleaded funds as requested in the Complaint. *See Sheridan v. United States,* 214 F. App'x 857, 858–59 (10th Cir. 2007) (holding a district court should review the body of a complaint to determine the true defendants, as opposed to simply those identified in the caption). Therefore, the Court will

---

[1] Silvia Burley, three other members of the Tribe who are members of Silvia Burley's family, and the estate of Defendant-in-Interpleader Yakima Dixie, who died on December 12, 2017, make up the so-called Burley Faction mentioned in the Motion to Lift Stay.

[2] Although Yakima Dixie is included in the Motion to Lift Stay as a member of the Burley Faction, he and Silvia Burley are on opposite sides of this interpleader dispute.

dismiss them by separate order. *See generally* The Late Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7 *Fed. Prac. & Proc. Civ.* § 1714 (3d ed. 2001) (stating that when the court decides that interpleader is available, it may issue an order discharging the stakeholder if the stakeholder is disinterested). The Court will then transfer this Interpleader Action to the E.D. Ca.

I.  BACKGROUND

   A.  The Complaint in Interpleader and Severance of the Interpleader Action

On September 29, 2016, Plaintiffs-in-Interpleader, the Plaintiff Class, through its class representatives, the Ramah Navajo Chapter, the Oglala Sioux Tribe, and the Pueblo of Zuni, filed the COMPLAINT IN INTERPLEADER (California Valley Miwok Tribe) (No. 90 CV 957, Doc. No. 1366; No. 18 CV 1194, Doc. No. 2) (Complaint) in the class action, *Ramah Navajo Chapter et al. v. Ryan Zinke, et al.*, No. 90 CV 957 JAP/KBM (*Ramah*). The amount of $323,647.60 (the interpleaded funds),[3] owed to the CVMT as class member # 72 under the Final Settlement Agreement (No. 90 CV 957, Doc. No. 1306-1) (FSA), is held in the Court's Registry. In the Complaint, the Plaintiffs-in-Interpleader alleged that they could not determine "who is entitled to execute the Claim Form for defendant-in-interpleader" CVMT and "to receive its share of the Net Settlement Amount, as identified in the [FSA][.]" (Compl. at 1–2.)[4]

The Dixie Faction constitute a majority of the members of a Tribal Council formed under a 2013 Tribal Constitution.[5] (Compl. ¶ 2.) In the 2015 Decision, Secretary Washburn refused to recognize either the General Council or the Tribal Council as the lawful governing body of the

---

[3] The amount of $322,259.60, which was the amount that the Tribe was entitled to under the Final Settlement Agreement (No. 90 CV 957, Doc. No. 1306-1), was deposited in the Court Registry on September 29, 2016. A second distribution under the FSA of $1,388.00 was added to the Court Registry for a total of $323,647.60. (*See* Compl. at 4.)

[4] The Complaint named as Defendants-in-Interpleader the CVMT, Yakima Dixie, Velma Whitebear, Antonia Lopez, Gilbert Ramirez, Jr., Antoinette Lopez, Michael Mendibles, Iva Carsoner, and Silvia Burley.

[5] The Dixie Faction notes that Yakima Dixie's seat on the Tribal Council is now held by Briana Sanchez. (Mot. to Transfer (Doc. No. 9-1) at 2.)

3

CVMT. In the Complaint, Plaintiffs-in-Interpleader asked the Court to assume control and pay the interpleaded funds "to such party or parties as the Court determines to be the proper payee(s) upon submission of a properly executed Claim Form[.]" (*Id.* ¶ 10.) Under the FSA, a Class Member must "return a signed copy of the Claim Form provided by the Settlement Administrator." (FSA at 24.) The Claim Form must be signed by a tribal official with authority to act for the tribe. *See* FSA Appendix 3 (No. 90 CV 957 Doc. No. 1306-4).

On December 14, 2018, Class Counsel filed the MOTION TO SEVER THE CALIFORNIA VALLEY MIWOK TRIBE INTERPLEADER ACTION, AND TO DESIGNATE SEPARATE CAPTION AND CASE NUMBER (No. 90 CV 957 Doc. No. 1621) (Motion to Sever). In the Motion to Sever, Class Counsel stated that they were "prepared to wind up this Class Action litigation … [which] will involve filing a motion to close this case with entry of a final judgment bringing the [*Ramah*] case to an end." (Mot. to Sever at 3.)[6] Class Counsel asked that the Court: (1) sever this Interpleader Action under Rule 21; (2) assign a different case number under the caption, *In re $323,647.60 in Funds Belonging to the California Valley Miwok Tribe*; and (3) direct the Court Clerk to transfer all relevant pleadings and documents into the new case. (*Id.*)

On December 17, 2018, the Court granted the Motion to Sever. *See* ORDER SEVERING CALIFORNIA VALLEY MIWOK TRIBE INTERPLEADER ACTION AND DESIGNATING SEPARATE CAPTION AND CASE NUMBER (No. 18 CV 1194 Doc. No. 1) (Interpleader Action). The Interpleader Action was assigned the caption *In re $323,647.60 in Funds Belonging*

---

[6] Class Counsel indicated that in the final judgment they would seek to "close the books as to all events in the case since the Court's approval of the FSA as regards the parties' implementation thereof." (*Id.*) In addition, Class Counsel "will ask that they be relieved of all further responsibilities in this action … [so that] there will be no further risk to Class Counsel or the Government that there is anything further to be done in this action." (*Id.*)

4

*to the California Valley Miwok Tribe*, and the Complaint and all relevant pleadings, motions, notices, and orders were transferred to Case No. 18 CV 1194.

      B.      Jurisdiction over the Interpleader Action

There are two types of interpleader: "statutory" and "rule" interpleader. *Primerica Life Insurance v. Montoya*, No. 18 CV 00109 JCH/DG, 2018 WL 3068059, at * 2 (D. N.M. June 21, 2018) (slip op.). Statutory interpleader is brought under 28 U.S.C. § 1335.[7] This Interpleader Action was brought under Rule 22, which provides:

> (1) Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
>
>> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
>>
>> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Fed. R. Civ. P. 22 (a)(1)(A) & (B). "The distinction between the two types of interpleader is that '[u]nlike statutory interpleader action under 28 U.S.C. § 1335, [i]nterpleader actions under Rule 22 … must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts.'" *Primerica Life Ins. Co.*, 2018 3068059, at * 2 (quoting, *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 704 (7th Cir. 2014)). Rule 22 is "merely a procedural device; 'it does not confer subject-matter jurisdiction on federal courts.'" *Id.* (citing *Arnold*, 752 F.3d at 700).

---

[7] (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, … if

> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property,… and if (2) the plaintiff has deposited such money or property … into the registry of the court, there to abide the judgment of the court[.]

28 U.S.C.A. § 1335.

Hence, in an action brought under Rule 22, either federal question jurisdiction or diversity jurisdiction must be established." *Id.*

The Court had federal question jurisdiction over the original interpleader filed in *Ramah*. *See* Anne E. Melley, *Fed. Proc. Lawyers Ed*. Chapter 49 *Interpleader* § 49:25 (discussing supplemental jurisdiction in context of interpleader). The Complaint was filed in *Ramah* to carry out the terms of the FSA and to distribute the settlement funds paid by the United States to discharge its liability to the members of the Plaintiff Class under federal statutory law. And under the FSA, this Court retained federal question jurisdiction for the "sole purpose of enforcing compliance with the terms and conditions of this FSA." (FSA at 32.)

The Court has diversity jurisdiction over the severed Interpleader Action. In Rule 22 interpleader actions, courts examine the citizenship of the "plaintiff-stakeholder," and the claimants. Here, none of the representatives of the Plaintiff Class are citizens of California, and the Defendants-in-Interpleader are all citizens of California. (*See* Mot. to Transfer (Doc. No. 9-2) Decl. of Antoinette Lopez ¶ 4) (stating that all Tribal Council members and the great majority of the Tribe's members reside in the Eastern District of California). Hence, Plaintiff Class are of diverse citizenship from the Defendants-in-Interpleader. In addition, the interpleaded funds, which constitute the amount in controversy, exceed $75,000.00. *See* 28 U.S.C. § 1332(a)(1).

C. Recent Rulings in the Eastern District of California and Ninth Circuit

The dispute involving membership and leadership of the CVMT between the Burley Faction and Yakima Dixie began in 1998 and has wended its way through "state courts, federal courts, and administrative agencies." *California Valley Miwok Tribe v. Zinke*, Case No. 2:16-

01345 WBS CKD, 2017 WL 2379945, * 1 (E.D. Ca. June 1, 2017).[8] The CVMT is a federally recognized tribe, formerly known as the "Sheep Ranch Rancheria of Me-Wuk Indians of California." *Id.* at * 1. In 2016, the Burley Faction challenged Secretary Washburn's 2015 Decision in the United States District Court for the Eastern District of California (E.D. Ca) alleging that the decision was arbitrary and capricious under the Administrative Procedures Act (APA). (Compl. Ex. A.) *See generally, California Valley Miwok Tribe v. Zinke*, 2017 WL 2379945, *aff'd* 745 F. App'x 46 (9th Cir. Dec. 11, 2018), *pet. for reh. denied* (Feb. 4, 2019). Members of the Dixie Faction intervened in the E.D. Ca. case. *Id.* 2017 WL 2379945 at * 1. On June 1, 2017, the E.D. Ca. granted summary judgment in favor of the Dixie Faction upholding the 2015 Decision. 2017 WL 2379945, at * 8. The Ninth Circuit affirmed. 745 F. App'x 46 (9th Cir. Dec. 11, 2018). On February 4, 2019 the Ninth Circuit denied the Burley Faction's petition for rehearing and rehearing *en banc*. *Id.*

In the 2015 Decision, Secretary Washburn determined that the Tribe's membership consists of more than the five individuals enrolled in 1998 (Yakima Dixie, Silvia Burley, Rashel Reznor, Anjelica Paulk, and Tristian Wallace) and that the General Council headed by Silvia Burley was not a valid governing body of the Tribe. *Id.* at * 3. However, Secretary Washburn

---

[8] In 1998, Yakima Dixie (Dixie) was the only person living on the Sheep Ranch rancheria, the CVMT reservation. In 1998, the Burley Faction received Dixie's permission to enroll in the Tribe. 2017 WL 2379945, at *2. Shortly thereafter, Burley and Dixie signed a resolution (the 1998 Resolution) purporting to establish the General Council as the Tribe's government, with Dixie as its head, but without involving any other member of the tribal community. *Id.* In 2004, Burley submitted documents to the BIA claiming she had replaced Dixie as the leader of the Tribe under a 1998 Resolution—a claim Dixie disputed. *Id.* In response to Burley's submission, the BIA withdrew its recognition of the Burley tribal government. *Id.* The Burley Faction challenged that decision in U.S. District Court for the District of Columbia, which upheld the agency's decision. *California Valley Miwok Tribe v. United States*, 424 F.Supp.2d 197, 203 (D. D.C. 2006) (*Miwok I*). The D.C. Circuit affirmed. *California Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1267 (D.C. Cir. 2008) (*Miwok II*). In 2011, after the Burley Faction resisted BIA efforts to assist the tribal community in adopting a tribal government through a majoritarian process, the BIA's Assistant Secretary for Indian Affairs issued a decision finding that the Tribe's membership was limited to five members and that the General Council headed by Burley was the Tribe's governing body (the 2011 Decision). The 2011 Decision was challenged in the District Court in D.C., which reversed and remanded the issue of membership in the Tribe to the BIA. *California Valley Miwok Tribe v. Jewell*, 5 F.Supp.3d 86, 98–100 (D. D.C. 2013) (*Miwok III*). On remand, Secretary Washburn issued the 2015 Decision, which has now been upheld in the E.D. Ca. and in the Ninth Circuit.

determined that the General Council was a tribal body that could manage the process of reorganizing the Tribe and gaining Federal recognition of the Tribe's government. *Id.* Secretary Washburn also determined that the 2013 Constitution, under which the Tribal Council was formed, was not properly ratified. *Id.*

II. DISCUSSION

    A. Motion to Lift Stay

The Movants ask the Court to lift the stay and issue an Order to Show Cause why the Interpleader funds should not be distributed to the four members of the Burley family and the estate of Yakima Dixie, as the only "actual" members of the Tribe. Essentially, Secretary Washburn already rejected that argument in the 2015 Decision and the issue has been repeatedly litigated in *Miwok I, II,* and *III* in the E.D. Ca. and the Ninth Circuit. However, the Movants claim that Dixie's death has rendered moot the 2015 Decision and all related court decisions. They contend that most recently, the Ninth Circuit improperly refused to consider "Dixie's death, because it was not before [Secretary Washburn] when he rendered his 2015 Decision." The Ninth Circuit rejected that argument when it denied the Burley Faction's petition for rehearing or rehearing *en banc*. Inexplicably, the Movants maintain that since Dixie has died, "there is no longer any need to reorganize, because there is no longer any leadership dispute." (Mot. to Lift Stay ¶ 3.) The Movants argue that this Court should "determine who is the authorized representative of the Tribe for purposes of receiving the Interpleader funds for the Miwok Tribe[.]" (*Id.* ¶ 4.) They further maintain that because the "leadership dispute" was a personal dispute between Yakima Dixie and Silvia Burley, Dixie's death nullifies that dispute. According to the Movants, "the BIA's efforts to force the Tribe to re-organize are now moot,

these 'potential'[9] members [the Dixie Faction] will never be in a position to participate in any re-organization of the Miwok Tribe. Thus, …the membership of the Miwok Tribe consists of those members [Yakima] Dixie enrolled before the leadership dispute commenced[.]" (*Id.*) In addition, the Movants argue that "Dixie's death leaves the question open as to whether the persons who comprise [Dixie's] group have standing to claim an interest in the Interpleader funds." (*Id.* ¶ 7.) According to the Movants, this Court can "determine who comprises the Miwok Tribe for purposes of entitlement to the Interpleader funds[.]" (*Id.* ¶ 5.)

The Movants misinterpret the 2015 Decision and the effect of Yakima Dixie's death. Secretary Washburn determined that there are three "Eligible Groups" that can become enrolled members of the Tribe: (1) individuals listed on a 1915 Census and their descendants; (2) the descendants of Jeff Davis, who was the only resident of the Sheep Ranch rancheria in 1935; and (3) the heirs of Mabel Dixie, a resident of the Sheep Ranch rancheria in 1967 (Yakima Dixie's mother).[10] The Movants fail to explain how Yakima Dixie's death nullifies the rights of the Eligible Groups to become enrolled members of the Tribe. Moreover, Secretary Washburn determined that as early as 1929, a Census of Indians of Calaveras County, California included 147 Indians "Mewuk mostly, but also some Tuolumne." (*Id.*) Secretary Washburn stated that the

---

[9] The Burley Faction uses the word "potential" members based on the E.D. Ca.'s statement that the majority of "eligible" members of the Tribe did not approve the General Council in 1998.

[10] The term "rancheria" has been used to refer to both the land itself, and to the Indians residing thereon; which is to say, "rancheria" is synonymous with both "reservation" and "tribe." The California Rancheria Act of 1958, amended in 1964 (the CRA), authorized the termination of federal recognition of California Rancherias by distributing each rancheria's assets to the Indians of the rancheria. The process was never completed for the CVMT. In 1967, Mabel Dixie, Yakima Dixie's mother and her common law husband, Merle Butler, were the only residents on the CVMT rancheria. The federal government transferred title to the one-acre parcel to Mabel Dixie in May 1967, but in September 1967, the U.S. requested and received a quit claim deed to the rancheria from Mabel apparently to ensure that all of the BIA's duties under the CRA were completed. No other action was taken after the quit claim was executed, and Mabel died in 1971. Therefore, the CVMT was never terminated and has been a federally recognized unorganized tribe since 1979. On November 1, 1971, the Office of Hearings and Appeals (OHA) issued its "Determination of Heirs" of Mabel Dixie. Merle Butler inherited 2/6 of Mabel's estate including her beneficial interest in the parcel, and Mabel's four sons, one of whom was Yakima Dixie, inherited 1/6 each. Accordingly, the rancheria land is held by the U.S. in trust for Mabel Dixie's heirs, who have an undivided, inheritable, beneficial interest in the land. (2015 Decision at 3.)

Eligible Groups should decide whether to include the descendants of the 1929 Census Indians as enrolled members of the Tribe. *See also Miwok II*, 515 F.3d at 1265 n.5 (noting that the Tribe "has a potential membership of 250[.]"). In sum, none of the dispositive findings and conclusions in Secretary Washburn's 2015 Decision is affected by Yakima Dixie's death.

In the Reply, the Movants argue that the Dixie Faction consists of the descendants of the original 12 members of the Sheep Ranch Band of Indians identified in the 1915 census. According to Secretary Washburn, these descendants are only "potential" members of the Tribe. However, the Burley Faction represents that in order to go from potential to "actual" members, the Dixie Faction was required to "obtain an assignment on the Rancheria" from Dixie prior to his death. (*Id.*) Hence, according to the Movants, Dixie's death prevents those individuals from ever becoming members of the Tribe. (*Id.* at 3.)

In this argument, Movants fundamentally misinterpret statements that Secretary Washburn made in recounting of the history of the BIA's dealings with the Sheep Ranch rancheria:

> In most instances, lands were acquired for the benefit of a band of Indians identified by Indian Agents C.E. Kelsey and John Terrell. In many instances, as in the circumstance for Sheep Ranch, a rancheria was not large enough for all members of the band to take up residence. Nonetheless, BIA field officials remained cognizant of the Indians of a band associated with, but not residing upon, each rancheria. When a parcel on a rancheria came available, BIA would assign the land to such a non-resident Indian who was associated with the band, if possible. Thus, such associated band Indians who were non-residents were potential residents. And since membership in an unorganized rancheria was tied to residence, potential residents equated to potential members.
>
> With this understanding of the Department's dealings with the California Rancherias and in light of the rulings in [*Miwok I, II* and *III*], I conclude that the Tribe's membership is not properly limited to Mr. Dixie and the Burley family.

(2015 Decision at 4) (footnote omitted). The Movants interpret this narrative as a recognition that all members or potential members of the Tribe must have been (1) residents of rancheria; or

10

(2) persons who had received an assignment of an interest in the rancheria from Dixie prior to his death. To the contrary, Secretary Washburn determined that based on the history of the Tribe, membership in the Tribe includes more than the actual residents of the rancheria.

Generally speaking, "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community … the judiciary should not rush to create causes of action that would intrude on these delicate matters." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) (finding no federal court jurisdiction over claims challenging tribal membership criteria). Similarly, this Court cannot determine who represents the Tribe—the Tribe must make that decision, subject to limited BIA oversight. *Wheeler v. U.S. Dep't. of the Interior*, 811 F.2d 549, 551 (10th Cir. 1987).

According to the Movants, the Tribe does not need a government recognized by the BIA to be a tribe. "As long as the Court can identify who are the actual members of the Tribe, it makes no difference who the leader is. Indeed, the interpleader funds need not be paid to a Tribal leader at all. Paying the members of the Tribe directly is tantamount to paying the Tribe itself." (Reply at 4.) However, under the FSA, all Class Member tribes must have a recognized governing body led by a tribal official with authority to sign the Claim Form before a tribe's share of the settlement funds can be distributed. *See* FSA at 24–26; FSA Appendix 3 (No. 90 CV 957 Doc. No. 1306-4).

At bottom, the Movants ignore the legal difference between tribal internal sovereignty and tribal recognition for purposes of receiving benefits from the United States government. As the D.C. Circuit explained,

11

> Indian tribes are "unique aggregations possessing attributes of sovereignty over both their members and their territory; they are a separate people possessing the power of regulating their internal and social relations." *United States v. Mazurie,* 419 U.S. 544, 557 … (1975) (internal quotation marks and citations omitted). To qualify for federal benefits, however, tribes must meet conditions set by federal law. The most important condition is federal recognition, which is "a formal political act confirming the tribe's existence as a distinct political society, and institutionalizing the government-to-government relationship between the tribe and the federal government." Cohen's Handbook of Federal Indian Law § 3.02[3], at 138 (2005 ed.).

*Miwok II,* 515 F.3d at 1263. In sum, the Movants fail to persuade the Court that it should lift the stay and distribute the interpleaded funds to the four members of the Burley family and Dixie's estate.

B.  Propriety of the Stay

The power to stay proceedings falls within a court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Kennedy Oil v. Luca Techs., Inc.*, 12-CV-194-F, 2013 WL 12284416, at *2 (D. Wyo. Apr. 19, 2013) (unpublished) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). Due to the ongoing court proceedings in California, the Court properly stayed this Interpleader Action pending the outcome of that dispute over the BIA's rejection of a tribal government for the CVMT. Even though the E.D. Ca. has rendered a decision and that decision has been upheld in the Ninth Circuit, the original reason for the stay still exists: The BIA has not recognized a governing body for the Tribe due to the existence of numerous potential members of the Tribe who did not participate in forming either of the purported governing bodies. Therefore, the Court will not lift the stay of the Interpleader Action. Instead the Court will enter separate orders dismissing the Plaintiff Class as Plaintiffs-in-Interpleader and transferring this Interpleader Action to the Eastern District of California.

IT IS ORDERED that the MOTION TO LIFT STAY IN CALIFORNIA VALLEY MIWOK TRIBE INTERPLEADER ACTION AND TO SET OSC OR SUMMARY JUDGMENT SCHEDULE (Doc. No. 8) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE